UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| EDWARD M. HOPKINS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CAUSE NO. 3:06-CV-532 WL |
| | ) |
| INDIANA STATE PRISON SUPERINTENDENT, | ) |
| | ) |
| | ) |
| Respondent. | ) |

OPINION AND ORDER

Edward M. Hopkins filed this habeas corpus petition *pro se*. Later, this court appointed him counsel to prepare and file the traverse. The court appreciates the able assistance of appointed counsel in helping to explore and develop Hopkins' three claims challenging his convictions by the Marion Superior Court on March 29, 2000 in cause number 49G02-9903-CF-47240.

The basic facts of the crimes were described by the Court of Appeals of Indiana. They are not disputed by Hopkins and therefore this court must accept them as true. 28 U.S.C. § 2254(e)(1).

> In the early morning hours of March 9, 1999, George Martinez and Paula McCarty were returning to Martinez's residence after an evening of bar hopping. They saw Hopkins and his brother Anthony stranded by the roadside. McCarty and Martinez stopped and gave the brothers a jumpstart. Martinez offered to "hold" anything Anthony had with him to keep it out of police hands should he continue to have car problems that evening. The car started, but shortly thereafter, Hopkins found Martinez and McCarty at a nearby Village Pantry and explained that he and his brother needed another jumpstart. At this point, Anthony accepted Martinez's previous offer to "hold" any property. They all went to Martinez's residence, where Anthony gave Martinez a handgun. Anthony and Hopkins then left.
>
> About fifteen minutes later, Hopkins and Anthony returned to Martinez's house. Martinez and McCarty assumed the brothers had further car problems, let them in, and prepared to give them a ride home. Hopkins and Anthony asked for the gun back, and Martinez obliged. As the group approached the front door to leave, Anthony locked the front door, pointed the gun at Martinez and McCarty, and ordered them to go to the basement. Once in the basement, Anthony ordered

  Martinez and McCarty to strip naked and empty their pockets. Anthony handed the gun to Hopkins, and Anthony went upstairs where he took approximately two to three pounds of marijuana and $ 4,500.00.

  Hopkins remained in the basement and shot Martinez in the neck. Anthony returned to the basement, took the gun and shot McCarty. While McCarty pretended to be dead, Hopkins and Anthony left. McCarty and Martinez worked together to use a cellular phone to call for help, as he could not speak above a whisper and her spinal cord was severed from the gunshot.

*Hopkins v. State*, 747 N.E.2d 598, 601 (Ind. Ct. App. 2001). The procedural history of this case is both complicated and undisputed. It is also largely irrelevant to the claims presented in this petition. Therefore a full recitation of his state court proceedings will be omitted in lieu of specific references as needed.

I.

Hopkins' first claim is that he was "convicted of crimes he was not formally charged with . . .." Petition at 5, docket # 1. He goes on to state that the "Indiana Court of Appeals reversed on January 31, 2006 and ordered correction of sentencing . . .." Petition at 5, docket # 1. Hopkins acknowledges in his traverse that the remand and re-sentencing resolved this claim. "No further requests for relief beyond that granted by the Indiana courts were made or considered on this issue, and therefore, this issue as presented by the petitioner appears to have been resolved in petitioner's favor." Traverse at 2, docket # 31. Therefore, this claim presents no basis for habeas corpus relief.

II.

Hopkins' second claim is that he "was denied his rights to a fair trial and due process, due to erroneous, misleading and confusing contradictory jury instructions on attempted murder and accomplice liability." Petition at 5, docket # 1. In his traverse, Hopkins directs this court's attention

to a case from the Southern District of Indiana which set out the United States Supreme Court standards for evaluating a claim based on a flawed jury instruction.

> Asserted instructional error under state law is generally not a basis for federal habeas relief. *See Gilmore v. Taylor*, 508 U.S. 333, 344, 124 L. Ed. 2d 306, 113 S. Ct. 2112 (1993). Even so, such error will not support a petition for federal habeas relief unless it is shown "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,'" but that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 146-47, 38 L. Ed. 2d 368, 94 S. Ct. 396 (1973). "In evaluating the instructions, we do not engage in a technical parsing of this language of the instructions, but instead approach the instructions in the same way that the jury would--with a commonsense understanding of the instructions in light of all that has taken place at the trial." *Johnson v. Texas*, 509 U.S. 350, 368, 125 L. Ed. 2d 290, 113 S. Ct. 2658 (1993) (*quoting Boyde v. California*, 494 U.S. 370, 380, 108 L. Ed. 2d 316, 110 S. Ct. 1190 (1990)).

*Conner v. Anderson*, 259 F.Supp.2d 741, 760-761 (S.D. Ind.,2003). Thus, it is by the standards set out in *Cupp v. Naughten*, 414 U.S. 141 (1973), that the decision of the Indiana Supreme Court must be gauged.

> AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*, 544 U.S. 133, 141 (2005) (citations omitted).

> As we have explained, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied a [United States] Supreme Court case incorrectly. Rather it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.

3

*Price v. Vincent*, 538 U.S. 634, 641 (2003) (quotation marks, citations and brackets omitted).

Here, the Indiana Supreme Court addressed the jury instruction claim and decided that though the jury instruction was flawed, Hopkins was not prejudiced.

> Defendant's substantive claim is that one of his two convictions for attempted murder must be reversed due to fundamental error in the way the jury was instructed on attempted murder. As authority, he points to the fact that our court reversed one of Anthony's convictions for attempted murder due to fundamental error in the way the jury was instructed on attempted murder. *Hopkins*, 759 N.E.2d at 639. The instruction failed to inform the jury that to convict on the charge of attempted murder, it was required to find beyond a reasonable doubt that Defendant possessed the specific intent to kill the alleged victim. *Id.* at 637 (*citing Bethel v. State*, 730 N.E.2d 1242, 1246 (Ind. 2000)). As the trial court used the same attempted murder instruction for Defendant that we found erroneous in Anthony's situation, we agree with Defendant that the trial court erred in instructing the jury in his situation as well.
> 
> But Defendant's claim is one of fundamental error - error so egregious that reversal of a criminal conviction is required even if no objection to the error is registered at trial. For error to be "fundamental," prejudice to the defendant is required. *Wrinkles v. State*, 690 N.E.2d 1156, 1171 (Ind. 1997) ("claim of fundamental error is not viable absent a showing of grave peril and the possible effect on the jury's decision,"*quoting Isom v. State*, 651 N.E.2d 1151, 1152 (Ind. 1995)).
> 
> A review of the facts of this case demonstrates that Anthony suffered prejudice as a result of the erroneous jury instruction but Defendant did not.
> 
> Defendant and Anthony confined a man named Martinez and a woman named McCarty in a basement. Anthony then went upstairs to look for drugs. While Anthony was upstairs, Defendant shot Martinez at close range. Anthony then returned and shot McCarty at short range. Both Martinez and McCarty pretended to be dead but both survived.
> 
> Defendant was charged with the attempted murder of each of Martinez (where he was the actual shooter) and of McCarty (where Anthony was the actual shooter). Anthony was charged with the attempted murder of each of Martinez (where Defendant was the actual shooter) and of McCarty (where Anthony was the actual shooter). That is, the attempted murder charge against Defendant with respect to McCarty and against Anthony with respect to Martinez were each premised on an accomplice liability theory - with respect to those shootings, they were not the actual shooters. In Anthony' situation, we found that because Anthony was upstairs when Defendant shot Martinez, it was simply too attenuated to say that Anthony was an accomplice to the attempted murder of Martinez without the jury having been instructed that it was required to find beyond a reasonable doubt that Anthony possessed the specific intent to kill Martinez. *Hopkins*, 759 N.E.2d 633. Defendant's

> situation is entirely different. When Anthony shot McCarty, Defendant was in the room with him and Defendant had already shot Martinez, who appeared to be dead. In this circumstance, the evidence of Defendant's specific intent that McCarty be killed is sufficient to conclude that Defendant suffered no prejudice from the failure of the trial court to instruct the jury that it was required to find beyond a reasonable doubt that Defendant possessed the specific intent to kill McCarty.
> 
> We hold that Defendant did not suffer the prejudice necessary to sustain a claim of fundamental error.

*Hopkins v. State*, 782 N.E.2d 988, 991-992 (Ind. 2003).

Hopkins argues that *In re Winship*, 397 U.S. 358 (1970), requires proof of guilt beyond a reasonable doubt. It does, but *Cupp v. Naughten*, 414 U.S. 141 (1973), addresses the more specific question of flawed jury instructions. After citing *Winship*, the Supreme Court in *Cupp* said, "We imply no retreat from the doctrine of *Winship* when we observe that it was a different case from that before us now." *Cupp*, 414 U.S. at 148. Thus, the Indiana Supreme Court's determination that Hopkins was not prejudiced by the flawed jury instruction did not deprive him of being proven guilty beyond a reasonable doubt as required by *Winship*, nor was it an unreasonable application of the *Cupp* standard that "the ailing instruction by itself [did not] so infect[] the entire trial that the resulting conviction violate[d] due process." *Cupp*, 414 U.S. at 147.

Though Hopkins argues that the erroneous jury instruction was the same one which resulted in a reversal for his co-defendant brother, he does not fully acknowledge that the facts of his case are critically different. The Indiana Supreme Court was not unreasonable to have discerned this difference in reaching different conclusions. Hopkins was present when Anthony shot the second victim. Hopkins had already attempted to kill the first victim. These facts, which the jury found when they convicted Hopkins of attempting to kill the first victim, established his intent to kill and no reasonable juror could have found otherwise as to the second victim even if they had been

5

properly instructed as to accomplice liability in attempted murder cases. Therefore this claim presents no basis for habeas corpus relief.

### III.

Hopkins' third claim is that "Counsel at trial failed to object to or tender correct instructions on attempted murder and accomplice liability or object to the double jeopardy violations at sentencing." Petition at 6, docket # 1. This claim merely restates the first two claims in the form of an ineffective assistance of counsel claim. For the reasons previously stated which explained why those underlying claims had no merit, so too this claim does not present a basis for granting habeas corpus relief.

### IV.

For the foregoing reasons, this habeas corpus petition is **DENIED**.

SO ORDERED.

ENTERED: October  25 , 2007

                                          s/William C. Lee
                                         William C. Lee, Judge
                                         United States District Court